CAT INDUSTRIAL DISPOSAL, INC.,
d/b/a Act I Disposal, Plaintiff,

v.

BROWNING FERRIS, INC., Defendant.

Civ. A. No. W–88–CA–012.

United States District Court,
W.D. Texas,
Waco Division.

Jan. 26, 1989.

David Kultgen, Beard and Kultgen,
Waco, Tex., for plaintiff.

Rufus Wallingford & Gerald G. Pecht,
Houston, Tex., for defendant.

MEMORANDUM OPINION
AND ORDER

WALTER S. SMITH, Jr., District
Judge.

On this day came on to be considered
Defendant's motion for summary judgment
under Rule 56 of the Federal Rules of Civil
Procedure. Defendant, Browning Ferris,
Inc. ("BFI") seeks to dismiss a cause of
action which was brought by Plaintiff, ACT
I Disposal ("ACT I"), under Section 2 of
the Sherman Act and Section 4 of the Clay-
ton Act. Having considered the briefs,
pleadings and applicable law, the Court
finds that Defendant's motion is meritori-
ous and should be granted.

*Factual Background*

This is a suit against Defendant for al-
leged violations of Section 2 of the Sher-
man Act and Section 4 of the Clayton Act.
Plaintiff and Defendant are competitors in
the commercial waste disposal business in
Corsicana, Texas. Plaintiff alleges De-
fendant has engaged in predatory pricing
in an attempt to monopolize the commercial
waste disposal market in Corsicana.

Prior to 1983 the City of Corsicana was
the provider of waste disposal services in
Corsicana, disposing of all waste for city
operations, commercial and residential ac-
counts. In August, 1983, ACT I received
permission from the city to provide waste
disposal services in Corsicana. Since that
time, ACT I, has garnered approximately
80% of the commercial garbage collection
business in Corsicana.

About December, 1985, the City of Corsicana awarded Moore Industrial Disposal ("Moore") a contract to provide residential waste disposal service in the city, to service city facilities, and to serve a few commercial accounts retained by the city. In July, 1986, BFI purchased Moore, succeeding to Moore's contract with the city. Since this time BFI has attained approximately 10%· of the commercial accounts in Corsicana.

Plaintiff asserts Defendant's conduct from 1986 to the present is an attempt to force Plaintiff out of the commercial disposal business in Corsicana, thus giving Defendant a monopoly share of the market.

### Discussion

The summary judgment vehicle is to be used sparingly, particularly in complex litigation, but it is available, despite apparent complexity, in a case where there is no genuine issue of material fact in dispute. *Bayou Bottling, Inc., v. Dr. Pepper Co.,* 725 F.2d 300, 303 (5th Cir.1984). Summary judgment has been granted in appropriate antitrust cases. *See, e.g. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Southway Theatres, Inc. v. Georgia Theatre Co.,* 672 F.2d 485 (5th Cir. 1982).

■ Section 2 of the Sherman Act forbids "every person to monopolize, or attempt to monopolize, ... any part of the trade or commerce ..." 15 U.S.C. § 2. "Monopoly power is the power to control price or exclude competition." *United States v. E. I. duPont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). The Section 2 Plaintiff must prove two elements to establish an attempt to monopolize: (1) specific intent to accomplish the illegal result, and (2) a dangerous probability that the attempt will be successful. *Swift Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905).

Plaintiff has charged that the "attempt to acquire a monopoly" requirement is illustrated by Defendant's predatory pricing tactics. Under a predatory pricing scheme the Defendant "must have sacrificed present revenues for the purpose of driving [Plaintiff] out of the market with the hope of recouping the losses through subsequent higher prices." *International Air Industries, Inc. v. American Excelsior Co.,* 517 F.2d 714, 723 (5th Cir.1975), *cert. denied,* 424 U.S. 943, 96 ·S.Ct. 1411, 47 L.Ed.2d 349 (1976). The Court in *American Excelsior,* in addressing a predatory pricing claim, explained:

> In order to prevail as a matter of· law plaintiff must at least show that either (1) a competitor is charging a price below his average variable costs in the competitive market or (2) the competitor is charging a price below its short-run, profit-maximizing price and barriers to entry are great enough to enable the discriminator to reap the benefits of predation before new entry is possible.

*Id.* at 724–25.

ACT I has charged that BFI is setting prices below its average variable costs and cites the affidavit of Cornell Venters in support. BFI in reply has stated that it is economically irrational to charge predatory prices because of the low entry barriers into the waste disposal market. "Without barriers to entry, it would presumably be impossible to maintain supra-competitive prices for an extended time" necessary to recoup short term losses. *Matsushita,* 475 U.S. at 591 n. 15, 106 S.Ct. at 1359 n. 15 (1986).

■ Thus, there are questions of fact in dispute as to the predatory pricing charge. First, whether BFI is charging a price below its average variable costs. Second, even if BFI is not charging such a price, whether the barriers to entry are great enough to make pricing below its short run profit maximizing price predatory.

Addressing the second element under *Swift,* it must be shown that there is a dangerous probability that Defendant's attempt to monopolize will be successful. *Swift,* 196 U.S. at 396, 25 S.Ct. at 279. Defendant has asserted that its share of the relevant market is insufficient as a matter of law for a finding of dangerous probability of success.

"While we 'must be particularly wary of the numbers game of market percentage when considering an "attempt to monopolize" suit,' a defendant must have some legally significant share of the market before he approaches the level of dangerous probability of success condemned by the attempt provision of section two." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490 (5th Cir.1984). Undisputed evidence of low market share may make monopolization an impossibility as a matter of law. *Dimmitt Argi Industries, Inc. v. CPC International, Inc.*, 679 F.2d 516, 529 (5th Cir.1982).

■ While the exact market share percentage necessary to prove an attempt to monopolize may vary under differing market conditions, absent a showing of special market conditions, a market share of less than 10%, as a matter of law, usually will not support a finding of attempt to monopolize. *Domed Stadium*, 732 F.2d at 491. ACT I has acknowledged that, for the period of which it has information, BFI's share of the market was approximately 10% and Plaintiff's share was approximately 90%. Since BFI's share of the market is so low, ACT I must demonstrate special market conditions which would support their claim of attempted monopolization. The Fifth Circuit in *Domed Stadium* identified factors which might give rise to an attempt to monopolize claim when a Defendant's market share is less than 50 percent. The factors include concentration of market, high barriers to entry, consumer demand, strength of competition and consolidation trends in the market. *Domed Stadium*, 732 F.2d at 490.

Beginning with market concentration, the relevant market in which Plaintiff and Defendant compete would be limited to the commercial waste disposal business in Corsicana. Therefore, the market is relatively concentrated. The barriers to entry into the business are low. This is illustrated by ACT I itself which was started with initial capitalization of less than twenty thousand dollars. Consumer demand would be relatively static, since commercial disposal businesses such as ACT I and BFI provide the major means of disposing of commercial waste. Certainly BFI would be deemed a strong competitor since it is a national multi-million dollar company engaged in the commercial waste disposal business. Finally, there are no trends of market consolidation. BFI has replaced Moore as a competitor of ACT I in the relevant market, but this is not a consolidation of competitors.

These special market conditions, when taken as a whole and weighed against BFI's ten percent share of the market, are not great enough to give rise to a dangerous probability that BFI will attain a monopoly. A ten percent share of the market as a matter of law is insufficient to support an attempt to monopolize claim. *Id.* at 491.

Plaintiff is unable to prove the dangerous probability of success in his attempt to monopolize claim as a matter of law. Therefore,

IT IS ORDERED that the Defendant's motion for summary judgment be and hereby is GRANTED.